IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.B., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. |
| RED LION HOTELS CORPORATION, | ) | |
| d/b/a RLH Corp.; S.H.D., INC.; | ) | |
| VAD PROPERTY | ) | |
| MANAGEMENT, LLC; and | ) | |
| HAMENT DESAI, | ) | |
| | ) | |
|     Defendants. | ) | |

## <u>COMPLAINT FOR DAMAGES</u>

COMES NOW Plaintiff in the above-styled action and hereby files her

Complaint as follows:

1.

This case arises out of the sex trafficking of Plaintiff J.B. at Defendants'

hotel.  Given the nature of the case, J.B. is identified in this Complaint only by her

initials to prevent public disclosure of her name.  Plaintiff's counsel has either

previously disclosed J.B.'s full name to defense counsel or will immediately upon

identification of counsel.  Upon information and belief, all parties consent to

proceeding by using J.B.'s initials.[1]

## PARTIES, JURISDICTION, AND VENUE

2.

J.B. is a citizen of the United States of America, is a resident of the State of

Florida, and consents to the jurisdiction of this Court.

3.

At all times relevant to this complaint, Defendants Red Lion Hotels

Corporation, d/b/a RLH Corp. ("Red Lion"), S.H.D., Inc. ("SHD"), VAD Property

Management, LLC ("VAD"), and Hament Desai ("Desai"), (collectively,

"Defendants") owned, managed, supervised, operated, oversaw, controlled the

operation of, and/or were inextricably connected to the renting of rooms at the

America's Best Value Inn located at 1641 Peachtree Street NE, Atlanta, Georgia,

30309 ("ABVI"), from which they benefited financially.

4.

Red Lion is a Washington corporation with its principal place of business at

---

[1] Contemporaneously with this Complaint, Plaintiff filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include sex trafficking, are intimate and personal in nature, as well as for J.B.'s own personal safety.

1550 Market Street, Suite 425, Denver, Colorado, 99201.  It regularly conducts business in the State of Georgia, derives substantial revenue from services rendered in Georgia, and has committed tortious acts or omissions within Georgia, resulting in injuries in Georgia.  Service can be made on Red Lion by serving its registered agent Corporate Creations Network, Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066.

5.

Jurisdiction and venue are proper as to Red Lion, and Red Lion was properly served with process in this action.

6.

SHD is a Georgia corporation with its principal place of business at 1641 Peachtree Street NE, Atlanta, Georgia 30309.  Service can be made on SHD by serving its registered agent: Hament Kumar Desai, 1641 Peachtree Street NE, Atlanta, Georgia 30309.

7.

Jurisdiction and venue are proper as to SHD, and SHD was properly served with process in this action.

8.

VAD is a Georgia limited liability company with its principal place of business at 5605 Lake Island Drive NW, Atlanta, Georgia 30327.  Service can be made on VAD by serving its registered agent: Bansari Desai, 5605 Lake Island Drive NW, Atlanta, Georgia 30327.

9.

Jurisdiction and venue are proper as to VAD, and VAD was properly served with process in this action.

10.

Defendant Hament Desai is a resident of the State of Georgia and may be served at his personal residence located at 5605 Lake Island Drive NW, Atlanta, Georgia 30327.

11.

Jurisdiction and venue are proper as to Desai, and Desai was properly served with process in this action.

12.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. 1595(a), and

pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims form part of the same case or controversy as her federal law claims.

13.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Fulton County, Georgia, within the Northern District of Georgia, Atlanta Division.

## THE PARTIES' ROLES

14.

At all times relevant hereto, Desai, SHD, and VAD owned, operated, maintained, controlled, and managed the ABVI.

15.

Red Lion accepted and ratified the conduct of Desai, SHD, and VAD and their employees, agents, and representatives as alleged herein.

16.

Red Lion is the franchisor of the ABVI brand and is a provider of guest lodging facility services, including at the ABVI.

17.

In exchange for a percentage of the revenue from room rentals at the ABVI, including the rooms in which Plaintiff was trafficked, Red Lion controls, manages, and operates the ABVI.

18.

Red Lion controls the day-to-day operations of the ABVI.  Red Lion enters into contracts with franchisees and members, including Desai, SHD, and VAD, that incorporate and bind Desai, SHD, and VAD to many other documents, contracts, and programs. These contracts and programs include the Franchise Agreement, Membership Agreement, Brand Standards Manual, and Hello Rewards Program, among others, which provide *mandatory* policies, procedures, and operational practices that control nearly every aspect of the ABVI's daily operation. These documents are collectively referred to as the "Franchisor Contracts."

19.

Through the Franchisor Contracts, Red Lion imposes hundreds of mandatory requirements and prohibitions on Desai, SHD, and VAD.  The more detailed Brand Standards imposed on Desai, SHD, and VAD are not suggestions, they are mandatory.  The Franchisor Contracts provide that hotels such as the ABVI must

be operated according to brand standards which "include all of our mandatory policies, procedures, specifications, standards, operating procedures, service standards, and rules."

20.

Red Lion's brand standards are onerous.  It's Membership Agreements note that they "may be more stringent than those necessary to achieve an AAA rating." Red Lion can and does terminate the Franchise and Membership Agreements if its hotels fail to comply with its brand standards.

21.

Through the Franchisor Contracts, Red Lion requires Desai, SHD, and VAD to submit to the daily control of Red Lion by requiring compliance with the Franchise Contracts, Red Lion's property management systems, guest programs, and central reservation system.  These programs dictate what hotel staff say to every hotel guest on a daily basis.   Employees of Desai, SHD, and VAD are required by Red Lion to enroll guests in certain programs, which in turn control the daily price and availability of rooms at the ABVI.

22.

Red Lion's predecessor in interest was Vantage Hospitality Group, Inc. ("Vantage").  Red Lion purchased all of Vantage's assets on September 30, 2016.

7

As part of that purchase, Red Lion assumed the membership agreements that governed most Americas Best Value Inns, including the ABVI.[2]

23.

Prior to the purchase, Bernard Moyle was the Chief Operating Officer of Vantage, in charge of "everything other than marketing and sales."[3]  As part of the purchase of Vantage, Mr. Moyle became Red Lion's Executive Vice President and Chief Operating Officer.  The duties, acts, omissions, and actual and constructive knowledge of Mr. Moyle and Vantage regarding Americas Best Value Inns, including ABVI, are the duties, acts, omissions, and actual and constructive knowledge of Red Lion.

24.

Red Lion holds itself out to be a "membership organization."  This relationship provides Red Lion with greater control and enforcement over the ABVI than other brands.  Brand members, including Desai, meet annually to vote

---

[2] As the successor in interest, allegations referring to Red Lion's knowledge and control over the ABVI include the conduct of Vantage Hospitality prior to September 30, 2016.

[3] Deposition transcript of Bernard Moyle as quoted in Plaintiff's opposition to Vantage Motion for Summary Judgment in *Jane Doe #1 v. Subh Properties, LLC, et al.*, Cir. Ct. for Wicomico Cty., Md., No. C-22-CV-17-000071 (filed March 12, 2018) (denying summary judgment as to whether Vantage had the right and authority to exercise control over security, training, and criminal activity related to sex trafficking at another ABVI).

on "brand standards" and if the vote passed, Red Lion undertook the responsibility to ensure that the topics voted on were instituted for all brand member hotels, including the ABVI.  The brand standards enforced by Red Lion upon the ABVI encompass all aspects of hotel management and operation, from the number of pillows on the bed to reservations and booking to safety and security standards.

25.

If a voting topic became a "training initiative," Red Lion is in charge of disseminating that training initiative to its brand member hotels.

26.

Red Lion requires franchisees and members, including Desai, to train every hotel employee according to the Franchisor Contracts. Red Lion requires Desai, SHD, and VAD to use e-learning modules and offers additional in-person training for all hotel employees and staff, which must be paid for by Desai, SHD, and VAD.  Brand inspectors provide additional training to brand member hotels, including the ABVI.

27.

Red Lion controls, among many other hotel functions at the ABVI, employee interaction with guests at the hotel; all food, supplies, products, and amenities available in the hotel; the hotel's online reputation management; and

guest reservation and booking, including check-in and check-out, rates and room inventory, front desk record-keeping, and other essential tasks.

28.

Red Lion set the pricing of room rates at the ABVI, continuously monitored real-time competitor pricing data, and made pricing decisions for each individual hotel, including the ABVI.  Continuously changing the price of hotel rooms is an essential function of the day-to-day operation of the ABVI and was controlled by Red Lion.

29.

Red Lion requires Desai, SHD, and VAD's employees to promote, manage, and operate the Hello Rewards program for the benefit of Red Lion. Red Lion reaps valuable guest data and increased profits from the program for Red Lion as a whole, as well as the ABVI brand. If Desai, SHD, and VAD's employees do not operate the program to Red Lion's satisfaction, Red Lion imposes monthly fines on Desai, SHD, and VAD.

30.

Pursuant to the Franchisor Contracts, Red Lion reserves the right to discontinue and terminate its relationship with Desai if Red Lion determines that the ABVI does not meet its brand standards, or if Desai, SHD, and VAD fail to

resolve customer complaints to Red Lion's satisfaction, or if the hotel incurs excessive guest complaints or poor online customer reviews.

31.

Red Lion employees responded to reviews and complaints from third-party websites on behalf of ABVI and stayed in ongoing communication with Desai, SHD, and VAD regarding the appropriate responses to guest reviews and complaints, including *requiring* Desai, SHD, and VAD to issue refunds to guests with specific complaints. Many of these publicly available reviews that reported prostitution and crime at the hotel, are discussed below.

32.

Red Lion employees are assigned member hotels to monitor, including monitoring reviews and setting up online news alerts reporting criminal activity at the hotel. These alerts notified Red Lion (then Vantage) of several criminal incidents at ABVI during the years Plaintiff was trafficked at the hotel.

33.

Red Lion sent inspectors to examine operations at ABVI. The ongoing sex trafficking activity would have been apparent to those inspectors.

34.

When Vantage inspected ABVI, the inspections were extensive and included inspections evaluating the safety and security measures at the hotel. After the inspection, Vantage issued an "action plan" to the ABVI with a summary of the inspection and a list of items or defects Vantage required ABVI to cure and a deadline for completion. The failure to meet these deadlines could result in the imposition of penalties, including loss of the brand.

35.

Vantage (now Red Lion) employees who inspected and trained ABVI hotel staff have testified, when asked if Vantage inspectors would want to know about criminal activity at individual Americas Best Value Inn locations which they inspected, "Of course, because their reputation – you know, we've got to monitor our properties and what they're doing and stuff, for sure." [4]

36.

Americas Best Value Inn inspector Penny Duelk has testified that inspectors for Vantage (now Red Lion) had the right and control to require that the hotels take

---

[4] Deposition transcript of ABVI inspector Penny Duelk as quoted in Plaintiff's opposition to Vantage Motion for Summary Judgment in *Jane Doe #1 v. Subh Properties, LLC, et al.*, Cir. Ct. for Wicomico Cty., Md., No. C-22-CV-17-000071 (filed March 12, 2018).

steps to correct safety and security issues at the hotel.  Ms. Duelk further testified that (1) detecting unsafe conditions and correcting those conditions at the hotels she inspected was important to her as an inspector; (2) that she had the control and power to do that as an inspector and that is part of Red Lion's safety and inspection report; (3) that inspectors like herself would have the right and authority to require the hotel to fix whatever she deemed unsafe or wrong; (4) and that if the hotel did not fix such safety and security issues, Vantage (now Red Lion) could punish the hotel in varying degrees of severity.[5]

37.

Vantage (now Red Lion) has admitted to its obligation to be informed about criminal activity on its brand members' hotel locations, including ABVI. Yet despite rampant sex trafficking occurring at ABVI in the years before Plaintiff was trafficked, Vantage was oblivious to the entire issue of human trafficking until the end of 2013. Mr. Moyle has testified that prior to a December 2013 meeting, "within our corporation we had not really heard much about [human trafficking] at all."[6]

---

[5] *Id.*
[6] *Id.* Deposition transcript of Bernard Moyle as quoted in Plaintiff's opposition to Vantage Motion for Summary Judgment.

38.

Since 2008, federal law has imposed civil liability on businesses who turn a blind eye to their profits from sex trafficking. From 2008 until 2013, Red Lion's Executive Vice President and COO, and Vantage's former COO, has testified that the company in charge of the ABVI did nothing to determine whether it was profiting from sex trafficking, deter sex trafficking, or discuss the issue at all. Worse, during that time, Vantage profited from a number of known and publicized instances of sex trafficking at Americas Best Value Inns.

39.

For example, in May 2013, a man was arrested on felony human trafficking charges after holding a woman against her will and forcing her to have sex for money at the Americas Best Value Inn in Rockdale County, Georgia.[7]

---

[7] Alice Queen, *Man Faces Human Trafficking Charge*, The Citizens (May 6, 2013), https://www.rockdalenewtoncitizen.com/news/man-faces-human-trafficking-charge/article_36fe2c8d-71d2-519a-bdcc-af6d21b18b2d.html (last visited Nov. 19, 2019).

40.

One month later—at the *same* Americas Best Value Inn in Rockdale County, Georgia—two women were arrested for sex trafficking a 14-year-old girl for weeks at the hotel.[8]

41.

Other examples that should have alerted Vantage to both the general issue of sex trafficking and the specific issue of sex trafficking at Americas Best Value Inns include:

a.  In August 2010 in Vacaville, California, a sting operation uncovered a prostitution ring at an Americas Best Value Inn. Seven individuals were arrested.[9]

b.  In thirty-two months from 2011 to 2014, police in Homewood, Alabama received 148 calls to an Americas Best Value Inn. In that period, the police arrested thirty-five wanted fugitives, made twenty

---

[8] Staff Reports, *Two Ga. Women Charged With Pimping 14-year-old*, Gwinnett Daily Post (June 4, 2013), https://www.gwinnettdailypost.com/news/state/two-ga-women-charged-with-pimping--year-old/article_bf32d697-73a9-554c-82fd-985ee03ae3ff.html (last visited Nov. 19, 2019).
[9] Catherine Bowen, *Vacaville Prostitution Sting Nets Seven Suspects*, The Reporter (Aug. 12, 2010), https://www.thereporter.com/2010/08/12/vacaville-prostitution-sting-nets-seven-suspects/ (last visited Nov. 19, 2019).

arrests related to prostitution, made thirty-three drug-related arrests, recorded two suicides, and responded to a murder that "involved at least 11 juveniles between the ages of 16-18 years old inside the crime scene with marijuana and weapons."[10] The city closed the hotel as a nuisance.

c. In April 2012, two men were arrested at an Americas Best Value Inn for sex trafficking a 15-year-old victim.[11]

d. In June 2013, a man was arrested for sex trafficking minors at an Americas Best Value Inn in Tampa, Florida.[12]

e. In November 2014, a major sex trafficking ring involving at least eight minor victims was uncovered at an Americas Best Value Inn in

---

[10] Ana Rodriguez, *Homewood Hotel License Pulled After 148 Police Calls, Including Murder, Prostitution, Over 32 Months*, AL.com, (Mar. 14, 2014), https://www.al.com/spotnews/2014/03/homewood_city_council_votes_to_1.html (last visited Nov. 19, 2019).

[11] Cathy Dawes, *RCPD Arrests Alleged Manhattan Sex Trafficking Suspects*, KMAN, (April 6, 2012), https://1350kman.com/sex-trafficking-case-reported-in-manhattan/ (last visited Nov. 19, 2019).

[12] *Tampa Man Pleads Guilty to Coercing and Enticing Minors into Prostitution*, F.B.I., (Jan. 27, 2014), https://archives.fbi.gov/archives/tampa/press-releases/2014/tampa-man-pleads-guilty-to-coercing-and-enticing-minors-into-prostitution (last visited Nov. 19, 2019).

Lansing, Michigan.[13]

42.

In November 2017, a man was arrested for trafficking a minor for sex at two different Red Lion hotels in Dekalb County, Georgia—one Americas Best Value Inn and one Americas Best Inn & Suites.  The man was later convicted of sex trafficking.[14]

43.

Despite admitting that Red Lion must monitor crime on its properties, and despite well-known incidents of sex trafficking at its hotels, including its hotels in the Atlanta area, Red Lion did nothing to address the open sex trafficking at ABVI while Plaintiff was openly trafficked at the hotel.

44.

Based upon the factual allegations outlined in paragraphs 14-43 and throughout this Complaint, Red Lion is directly liable for its own acts and negligence and vicariously liable for the acts and negligence of Desai, SHD, and VAD as discussed herein.

---

[13] Christopher Behnan, *Teens Involved Lansing Sex Trafficking Ring*, Lansing State Journal, (Nov. 20, 2014), https://www.lansingstatejournal.com/story/news/local/2014/11/20/witnesses-face-lansing-man-charged-sex-trafficking-ring/70010754/ (last visited Nov. 19, 2019).
[14] State v. Owens, Case No. 18-cr-1186-8 (Ga. Sup. Ct., Dekalb Cty. Oct. 5, 2018).

45.

All Defendants are directly and vicariously liable for the acts and negligence of Desai, SHD, and VAD's agents and employees as discussed herein.

46.

Whenever reference is made in this complaint to any act, deed, or conduct of a Defendant, the allegation is that the Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendant.

## **SEX TRAFFICKING ALLEGATIONS**

47.

Sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act knowing or in reckless disregard of the fact that force, fraud, or coercion will be used to cause the person to engage in a commercial sex act.  18 U.S.C. § 1591(a), *et seq*.  Plaintiff was a victim of sex trafficking at Defendants' hotel at all times relevant to this Complaint.

48.

Defendants knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' adoption of the Palermo Protocol, to prevent, suppress, and punish trafficking in persons.

49.

Defendants knew or should have known, at least by 2014, that Atlanta was a hub of sex trafficking and that the crime was prevalent in the city, including at Defendants' hotels.  According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country.  In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.

50.

Without a venue, or crime scene, a sex trafficking venture ceases to exist. Defendants, for a fee, provided the crime scene, a private and anonymous venue for J.B. to be sold for sex at their hotel.

51.

Plaintiff was trafficked for sex at the ABVI, where she was an invitee, from March of 2018 through June of 2018.[15]

52.

Plaintiff's sex trafficker operated openly and brazenly at the ABVI. J.B.'s trafficker forced her and other sex trafficking victims to openly solicit buyers on the ABVI premises by walking the parking lot in very little clothing.  ABVI's on-site manager instructed J.B.'s trafficker to bring his own buyers to ABVI, rather than solicit other hotel guests.

53.

ABVI's onsite manager arranged with Plaintiff's trafficker to have sex with Plaintiff in her room at the ABVI on two (2) separate occasions and knowing Plaintiff was a sex trafficking victim.  J.B. also witnessed ABVI's manager having sex with several other sex trafficking victims. Said manager knew these various victims were controlled by a sex trafficker and knowingly participated, protected

---

[15] Plaintiff escaped from her trafficker on June 22, 2018.  Accordingly, pursuant to the provisions of the Georgia Supreme Court's Third Order Extending Declaration of Statewide Judicial Emergency entered on June 12, 2020, the statute of limitations for Plaintiff's state law claims was extended and expires on October 22, 2020.  The TVPRA provides a 10-year statute of limitations and Plaintiff herewith has filed all claims within the appropriate time limitations.

and allowed the sex trafficking operations.

54.

While she was trafficked at the ABVI, Plaintiff exhibited numerous well-known and visible signs of a sex trafficking victim in the common areas, of which Defendants knew or should have known, including her inappropriate appearance, physical deterioration, malnourishment, poor hygiene, fatigue, sleep deprivation, bruising and other injuries, a failure to make eye contact with others, no control of or possession of money, loitering, soliciting male patrons, and monitoring and control by her trafficker.

55.

While she was trafficked at the ABVI, Plaintiff's rooms evidenced numerous well-known and visible signs of sex trafficking of which Defendants knew or should have known.

56.

While Plaintiff was trafficked at the ABVI, many older men visited the sex trafficker's rooms each day, each for short periods of time. Defendants knew or should have known that the number of daily, male visitors to the room was obviously indicative of sex trafficking, and Defendants negligently failed to control or monitor the frequent male visitors.

57.

While Plaintiff was trafficked at the ABVI, approximately thirteen (13) other victims were also trafficked for sex at the hotel by J.B.'s trafficker. As a result, a large number of buyers frequented the hotel each day.

58.

Plaintiff and other trafficking victims frequently appeared throughout the hotel and on the hotel premises and approaches wearing very little clothing. ABVI's manager saw J.B. at breakfast on several occasions wearing very little clothing but did nothing other than to tell J.B.'s trafficker that she was no longer allowed to eat breakfast in the lobby.

59.

Plaintiff interacted with the hotel staff and managers at the ABVI, who knew or should have known Plaintiff was a victim of sex trafficking occurring at the ABVI, yet they negligently did nothing.

60.

Employees at the ABVI accommodated and were familiar with Plaintiff's trafficker, due to his having stayed at the ABVI while trafficking other victims there in the months and years prior to Plaintiff's sex trafficking.

61.

Defendants knew or should have known that the ABVI was utilized for sex trafficking as Defendants, at all relevant times, posted a sign at the front desk and required guests to sign a form indicating that no refunds would be given on rooms after five (5) minutes.  This policy is also well publicized in online reviews.  There is no legitimate reason for such a policy rather than to prevent buyers from seeking refunds after having sex with victims of sex trafficking.

62.

Red Lion controls how Desai, SHD, and VAD spend their money and what Desai, SHD, and VAD may purchase.  Red Lion requires Desai, SHD, and VAD to offer and sell only authorized products and services and requires them to enter into agreement with Red Lion's authorized vendors and suppliers.  Red Lion negotiates the price, terms, discounts, and commissions Desai, SHD, and VAD will receive on the purchase of furniture, supplies, and amenities essential to the daily operation of the ABVI.

63.

Pursuant to Red Lion's brand standards and the applicable franchise and member agreements, Red Lion performed annual inspections of the ABVI property, operations, and records to ensure the property was maintained according

to Red Lion's standards.  Red Lion's policies dictate that problem hotels were inspected more frequently pursuant to the Accelerated Property Experience.  The sex trafficking activity at the ABVI was apparent to Red Lion's inspectors.

64.

Managers and employees at the ABVI visited the rooms used for Plaintiff's sex trafficking, and at times bought sex with sex trafficking victims and drugs from Plaintiff's trafficker.

65.

Plaintiff's trafficker carried handguns throughout the duration of her trafficking and used violence, intimidation, and forced drug use to control her.  On or about June 22, 2018, after she was beaten by her trafficker, Plaintiff was allowed to get ice for her injuries.  In the few minutes that she was alone, Plaintiff managed to call for help and escape.

66.

Based on publicly available information and police reports, Defendants knew or should have known of the following sex trafficking crimes and other crimes occurring on their premises and approaches and at other nearby America's Best Value Inns prior to Plaintiff's sex trafficking:

a) In May of 2013, a man was arrested for felony human trafficking after holding a woman against her will and forcing her to have sex for money at the America's Best Value Inn in Rockdale County, Georgia.

b) In June of 2013, two (2) women were arrested for the sex trafficking of a 14-year-old girl at the America's Best Value Inn in Rockdale County, Georgia.

c) On July 12, 2013, an armed robbery and carjacking occurred at the ABVI at issue.

d) On November 8, 2013, a woman was shot in the parking lot of the ABVI at issue.

e) On April 21, 2014, ABVI's manager was robbed at the ABVI at issue.

f) On July 4, 2015, a robbery was reported to the Atlanta Police Department at the ABVI at issue.

g) On November 25, 2015, gunshots were fired in a room at the ABVI and ABVI's manager called the police.

h) On March 1, 2016, a nineteen-year-old was raped at gunpoint at the ABVI at issue.

i) On September 15, 2016, the ABVI's manager reported to police that someone on the premises assaulted and threatened to kill him.

j)  In November 2017, a man was arrested for trafficking a minor for sex at two different Red Lion hotels in Dekalb County, Georgia—one America's Best Value Inn and one America's Best Inn & Suites.  The man was later convicted of sex trafficking.

67.

Red Lion requires Desai, SHD, and VAD to send all crime and incident reports concerning the property directly to Red Lion.  All Defendants knew or should have known of sex trafficking and other criminal activity existing at the ABVI prior to Plaintiff's sex trafficking.

68.

Defendants had actual and constructive knowledge of sex trafficking and other criminal activity existing on the property and in the surrounding area prior to Plaintiff's sex trafficking. Defendants knew or should have known of violent crimes occurring on their premises and approaches, including a November 9, 2013 shooting in the parking lot of the ABVI.

69.

Defendants had actual or constructive knowledge of publicly available online reviews of the ABVI reporting widespread prostitution and crime occurring at the hotel.

70.

Defendants knew or should have known of a May 2014 review stating:

I was propositioned to go to room 208 when I got there from some man who asked me was I looking to get paid… I was so digusted and the men in my family were very upset… there were drug transactions going on in our faces and people actually coming up to us with drug propositions.

71.

Defendants knew or should have known of a May 2014 review stating:

Very very unsafe feeling hotel.  Prostitutes and sketchy drug addicts hanging around in parking lot and stairwells.  Very loud place…

72.

Defendants knew or should have known of a June 2014 review stating:

I stayed one night in this hotel.  AWFUL… working girl traffic day and night…

73.

Defendants knew or should have known of a June 2015 review stating:

This place is filthy.  There were sketchy people lingering outside. I didn't feel safe.

74.

Defendants knew or should have known of an August 2016 review stating:

If you like Semen stains on your headboard.  Pee stains running down the wall.  Cigarette burns on top of the microwave of a

non smoking room.  Prostitutes outside of your door.  Rude and completely ignorant hotel managers.  This is your kind of dump.  This is the worst place I have ever stayed.

75.

Defendants knew or should have known of a February 17, 2018 review stating:

Awful.  Scary…. Dirty.  DO not stay there… Gangstas hang around & roam outside the rooms at night.  Terrifying motel. Do not go there.

A response to this review on booking.com was posted by the property.

76.

Defendants knew or should have known of a March 19, 2018 review stating:

Dangerous place to stay in, don't go with family, drugs, noise, criminals wondering there.

A response to this review on booking.com was posted by the property.

77.

As a direct and proximate result of Defendants' acts and omissions, J.B. suffered substantial physical, emotional, and psychological harm and other damages.

## COUNT I
## NEGLIGENCE ALLEGATIONS

78.

Plaintiff incorporates Paragraphs 1 through 77 as if fully restated herein verbatim.

79.

Defendants knew or should have known the steps to take to prevent the ABVI from being used as a venue for J.B.'s sex trafficking, but negligently failed to remedy, prevent or report the sex trafficking.

80.

Defendants negligently failed to train their employees, managers, and agents on the Department of Homeland Security ("DHS") guidelines to identify warning signs that indicate the presence of sex trafficking on the hotel premises such as:

a)   persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b)   persons who lack freedom of movement or are constantly monitored;

c)   persons who have no control over or possession of money or ID;

d)   persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e)   requests for room or housekeeping services (additional towels, new

linens, etc.), but denial of hotel staff entry into the room;

f)   the presence of multiple computers, cell phones, pagers, credit card
     swipers, or other technology in the room;

a)   extended stay with few or no personal possessions in the room;

b)   excessive amounts of sex paraphernalia in rooms (condoms, lubricant,
     lotion, etc.);

c)   the same person reserves multiple rooms;

d)   a room is rented hourly, less than a day, or for an atypical extended
     stay;

e)   attempts to sell items to or beg from patrons or staff;

f)   cars in the parking lot regularly parked backward, so the license plates
     are not visible;

g)   loitering and solicitation of male patrons;

h)   waiting at a table or bar and picked up by a male (trafficker or
     customer);

i)   persons asking staff or patrons for food or money; and

j)   persons taking cash or receipts left on tables.

81.

In spite of their knowledge about the illegal activity at the ABVI,

Defendants negligently failed to implement any measures to protect their invitees,

including Plaintiff, from becoming victims of sex trafficking at the ABVI and

continued their venture to profit from the operation of the ABVI and the sex

trafficking incorporated into the ABVI's daily operations.

82.

Defendants negligently failed to implement policies and procedures to

prevent, identify, and deter sex trafficking in their hotels and to ensure they were

not profiting from sex trafficking, as required by the TVPRA and other federal law.

83.

At all relevant times, Defendants controlled the operation and management

of the ABVI and had the legal duty to keep the premises in a state consistent with

due regard for the safety of their invitees, including Plaintiff. Defendants breached

said duty and failed to act as similarly situated businesses would in like

circumstances.

84.

Prior to and including the time when Plaintiff was trafficked at the ABVI,

Defendants negligently maintained, inspected, secured, patrolled, and managed the

ABVI. Defendants had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol, and manage the premises, but negligently failed to exercise ordinary care, thereby creating an unreasonable risk of injury to invitees, including Plaintiff.

85.

Defendants had actual and constructive knowledge of the dangerous and hazardous conditions existing at the ABVI due to the knowledge of their employees and agents and due to the prior criminal activity and dangers associated with the property and surrounding high crime area.

86.

Plaintiff's sex trafficking was foreseeable to Defendants because they knew or should have known about the actual events with Plaintiff, prior sex trafficking at the hotel, as well as the history of criminal activity at and around the ABVI and in the surrounding high-crime area. Thus, Defendants owed a duty to invitees like Plaintiff to exercise ordinary care in keeping the premises and approaches safe from criminal activity, especially sex trafficking.

87.

Defendants breached the duty owed to Plaintiff by failing to exercise ordinary care to keep their premises safe and negligently permitting criminal activity, especially sex trafficking, to exist and remain at the ABVI.

88.

Defendants knew of, or in the exercise of ordinary care, should have known of the dangerous and hazardous conditions existing on the premises, and the failure to maintain, inspect, secure, patrol, and manage the premises, and that these conditions were likely to, and did, result in sex trafficking previously at the ABVI and again to Plaintiff.

89.

Defendants had actual and constructive knowledge of criminal activity, including sex trafficking, at and around the ABVI prior to Plaintiff's sex trafficking.

90.

Despite their actual and constructive knowledge of criminal activity, including sex trafficking, Defendants negligently failed to protect invitees, including Plaintiff, from the risks of sex trafficking and other violent crimes.

91.

Despite their actual and constructive knowledge of criminal activity, Defendants negligently failed to warn Plaintiff or other invitees of the dangers at and around the ABVI.

92.

Despite their actual and constructive knowledge of sex trafficking and other criminal activity, Defendants negligently failed to maintain adequate security devices and personnel to permit proper use of the property, thereby causing an unreasonable risk of injury to invitees, including Plaintiff.

93.

Despite their actual and constructive knowledge of sex trafficking and other criminal activity, Defendants negligently failed to maintain policies, procedures, or systems of investigating, reporting and warning of sex trafficking and other crimes, and negligently operated and maintained the ABVI.

94.

Despite their actual and constructive knowledge of criminal activity, Defendants failed to take appropriate action to remedy or reduce the danger to their invitees and allowed the dangerous environment at the ABVI to worsen and continue to exist unabated, thereby creating a nuisance.

95.

Because Defendants had knowledge of, or in the exercise of reasonable care should have had knowledge of, sex trafficking at the ABVI and the dangerous environment at and around the subject premises, Defendants are liable for the negligent supervision, hiring, training, and retention of their employees and the entrustment of said property to their agents and employees. Said negligence proximately caused the damages and injuries to Plaintiff.

96.

Defendants negligently represented to invitees that the ABVI was properly maintained and that the property was safe.

97.

Defendants were negligent and said negligence proximately caused Plaintiff's injuries in the following ways, to-wit:

    a)    Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

    b)    Negligently failing to keep the premises in a state of good repair;

    c)    Negligently violating O.C.G.A. § 41-1-1 by creating and maintaining a nuisance;

    d)    Negligently failing to provide appropriate and effective security

personnel during Plaintiff's sex trafficking at the hotel;

e)      Negligently failing to properly inspect and maintain the premises;

f)      Negligently failing to properly train and supervise their employees regarding sex trafficking at the hotel;

g)      Negligently failing to properly retain, hire, train, and supervise said employees;

h)      Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

i)      Negligently failing to respond to online reviews and publicly available information;

j)      Negligently failing to prevent loitering and trespassing;

k)      Negligently failing to remove loiterers and trespassers;

l)      Negligently failing to inspect, patrol, or appropriately monitor the property;

m)     Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

n)      Negligently failing to remediate a long history of crime at the ABVI and the area nearby;

o)      Negligently failing to warn invitees of known hazards at the property; and

p)      Negligently representing to invitees that the property was safe.

98.

Each of the foregoing acts and omissions constitute an independent act of negligence on the part of Defendants and one or more or all above stated acts were the proximate causes of the injuries sustained by Plaintiff. Defendants are liable for J.B.'s injuries sustained, pain and suffering, the expenses of treatment and all other elements of damages allowed under the laws of the State of Georgia, including all special, compensatory, incidental, consequential, economic, and punitive damages.

99.

Defendants are liable for the domestic sex trafficking of Plaintiff.

100.

Defendants' negligence discussed in this count was a cause in fact and a proximate cause of Plaintiff's substantial physical, emotional, and psychological harm and other damages.

# COUNT II
## STATUTORY LIABILITY
### 18 U.S.C. § 1595

101.

Plaintiff incorporates Paragraphs 1 through 100 as if fully restated herein verbatim.

102.

In violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), Defendants knowingly benefitted from participation in a venture that Defendants knew or should have known engaged in acts in violation of the TVPRA.

103.

Defendants knowingly benefitted from Plaintiff's sex trafficking by receiving a percentage of the revenue generated by the operation of the ABVI, including a percentage of the revenue generated for the rate charged on the rooms in which Plaintiff was trafficked.

104.

Defendants participated in a hotel venture and knew or should have known that the hotel venture violated the TVPRA. Defendants further engaged in a sex trafficking venture by providing to Plaintiff's trafficker the necessary venue for

Plaintiff's sex trafficking.  In the course of this venture, multiple men paid to have sex with Plaintiff at the ABVI over a course of three (3) months.

105.

The venture in which Defendants participated was in or affecting interstate commerce.

106.

Defendants knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants, their agents and representatives, had the opportunity to observe Plaintiff at the hotel, with and without her trafficker, the signs of sex trafficking exhibited by Plaintiff, her trafficker, and the rooms in which she was trafficked, the frequent traffic of male buyers to J.B.'s rooms, and Defendants' on-site manager arranged with Plaintiff's trafficker to have sex with Plaintiff on two (2) separate occasions, and arranged for sex with other victims of trafficking at the ABVI while Plaintiff was trafficked there.

107.

Defendants knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants, their agents and representatives knew or should have known of other sex trafficking and sex crimes at the hotel before Plaintiff was trafficked for sex at the ABVI.

108.

Defendants are directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of their agents and representatives.

109.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants' participation in this sex trafficking venture.

110.

Defendants are liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

111.

All Defendants are jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## **DAMAGES**

112.

Plaintiff incorporates Paragraphs 1 through 111 as if fully restated herein verbatim.

113.

As a proximate and foreseeable result of the Defendants' negligence and violations of the TVPRA, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial.  Plaintiff brings each and every claim permissible under Georgia and federal law against Defendants for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia and federal law, including, but not limited to:

    a)     Personal injuries;

    b)     Past, present and future conscious pain and suffering;

    c)     Loss of enjoyment of life;

    d)     Medical expenses;

    e)     Mental anguish and emotional distress;

    f)     Loss of past, present, and future wages;

    g)     Incidental expenses;

h)      All special, compensatory, economic, punitive, and other damages

         permissible under Georgia law and Federal law; and

i)      Consequential damages to be proven at trial.

114.

Plaintiff is entitled to an award of punitive damages without limitation or

cap because the actions of Defendants and their employees were willful and

wanton and showed an entire want of care, which raises the presumption of a

conscious indifference to consequences.

115.

Defendants' actions evidence a species of bad faith, were and are stubbornly

litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to

recover her necessary expenses of litigation, including an award of reasonable

attorneys' fees and expenses required by this action.  (O.C.G.A. §§ 13-6-11, 9-11-

68 and 9-15-14, and 18 U.S.C. § 1595(a)).  Furthermore, Plaintiff is entitled to all

expenses of litigation and attorneys' fees pursuant to all other Federal and Georgia

statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and

against Defendants for the following:

a)      Process issue as provided by law;

b)      Plaintiff be awarded actual damages in amounts to be shown at trial

from the Defendants;

c)      Plaintiff be awarded all general, special, compensatory, economic,

consequential, punitive and other allowable damages in accordance

with the enlightened conscience of an impartial jury from Defendants;

d)      Plaintiff be awarded a trial by jury; and

e)      Plaintiff have such other relief as this Court deems just and appropriate

under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 28th day of September, 2020.

Respectfully submitted,

**LAW & MORAN**

/s/ Denise D. Hoying
Peter A. Law
Georgia Bar No. 439655
pete@lawmoran.com
E. Michael Moran
Georgia Bar No. 521602
mike@lawmoran.com
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710

**ANDERSEN, TATE & CARR, P.C.**

/s/ Patrick J. McDonough
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
Attorneys for Plaintiff

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***Complaint for Damages*** has been

prepared with one of the following font and point selections approved by the Court

in LR 5.1., NDGA.  Specifically, the above-mentioned pleading was prepared

using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

<u>/s/ Denise D. Hoying</u>
Peter A. Law
Georgia Bar No. 439655
pete@lawmoran.com
E. Michael Moran
Georgia Bar No. 521602
mike@lawmoran.com
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710